## *Radford Trust Company *v.* Lumber Company.

### (*Knoxville.* February 7, 1893.)

1. Supersedeas. *Of judgment of Supreme Court not granted, when.*

A valid final judgment of this Court cannot be superseded after close of term at which it was rendered, upon averment that the Court erred in its decision of the case.

2. Judgments. *Of Supreme Court valid when special Judge participated.*

A final judgment of this Court is valid, and its execution will not be arrested by supersedeas after close of term, when it was pronounced by the Court, when composed of four regular Judges and a disinterested lawyer sitting by consent of Court and parties, but without a commission, in the room and stead of the absent member of the Court. There was present a quorum of the regular Judges. The participation, with consent of Court and parties, of a disinterested lawyer with a quorum of the regular Judges, in the hearing and determination of a cause, will not vitiate the judgment, whether he be considered as acting as a Judge without a commission or in the capacity of amicus curiae.

Code construed: § 4682 (M. & V.); § 3921 (T. & S.).

Cases cited and approved: McCombs *v.* Guild, 9 Lea, 81; Brogan *v.* Savage, 5 Sneed, 693; Wroe *v.* Greer, 2 Swan, 172; Crozier *v.* Goodwin, 1 Lea, 128; Holmes *v.* Eason, 8 Lea, 754; Posey *v.* Eaton, 9 Lea, 501; 110 Penn. St., 598; 6 Q. B., 753; 3 N. Y., —.

Cited and distinguished: Glasgow *v.* State, 9 Bax., 485; Neil *v.* State, 2 Lea, 675.

Cited and disapproved: 4 Greene, 104; 7 Clarke, 487; 39 Wis., —.

Cited as overruled: Reams *v.* Kearns, 5 Cold., 217; Smith *v.* Pearce, 6 Bax., 72; Pierce *v.* Bowers, 8 Bax., 353.

3. Same. *Same. Consent to sitting of special Judge.*

Upon collateral attack of a judgment, consent of parties to the participation of a special Judge, acting without commission in its rendition, is conclusively proved by the record recital of such consent. Objec-

---

*This application was made while Court was in session at Nashville, and was passed upon by all the Judges.—Reporter.

Radford Trust Company *v.* Lumber Company.

tion to the sitting of such special Judge would, in such case, be treated as conclusively waived if the record were silent on this point.

Cases cited and approved: Kilcrease *v.* Blythe, 6 Hum., 378; Pope *v.* Harrison, 16 Lea, 92.

## FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

GREEN & SHIELDS for Radford Trust Co.

H. M. WILTSE for Lumber Co.

LURTON, J.  At the September Term of this Court, held at Knoxville, the decree of the Chancellor in favor of the Radford Trust Company, and against the East Tennessee Lumber Company and another, was affirmed, and an execution ordered to issue for the debt and costs.  The defendants have now filed a petition in the cause, praying that the decree be superseded.

So far as this relief is predicated upon the merits of the original cause, it must be most manifest to learned counsel that it cannot be considered.  The decree was final.  The term has passed, and all power to inquire into the merits of the litigation is gone.

But petitioners insist that the decree was *void*, and should therefore be superseded. This allegation of voidness is predicated upon the statement that the opinion of the Court affirming the Chancellor's decree was announced by Special Judge T. S. Webb. On this point the petition states that Judge Webb "was acting as special Judge in the absence of Hon. Peter Turney;" that "a petition to rehear was filed, which also came to the hands of said Special Judge Webb, and was dismissed November 12, 1892." It also states, "upon information and belief," that "when the said special Judge sat at the hearing of the said cause, and when he delivered the opinion therein, and when he considered and dismissed their petition to rehear, he was acting without authority, and was disqualified and incompetent to so act by reason of the fact that he had not been appointed or commissioned so to act by the Governor of the State, as required by law." After stating that no ground existed for the appointment of a special Judge, the petitioners then aver that "during the absence of Judge Turney the said Webb sat and acted in certain cases by consent of parties, as shown by the record, but they are advised that their assent, or that of their counsel, would have been necessary to render him competent to sit and act in this case, *and they state that no such consent was given.*"

It is at the outset to be observed that the petition nowhere states or intimates that, either upon the original hearing nor upon the application for

a rehearing, was there any objection advanced or intimated to the sitting of Judge Webb. As to the allegation that no consent was given to his acting as Judge on the hearing of this case, it is sufficient to say that this is explicitly contradicted by the record. The decree in the cause recites "that the cause was heard October 27, 1892, before the Honorable Supreme Court of Tennessee, sitting at Knoxville, * * * and the Court, being of opinion that there is no error in the decree, the same is in all things affirmed, and defendant's assignments of error overruled."

If we limit the examination to the recitals of the particular decree, it would not appear who composed the Court, or that any other than the regular members of the Court participated in its action. No written opinion seems to have been filed, and we cannot be aided by resorting to such opinion. If we look, however, to the caption of the minutes of the Court—and this is part of the record, by which the validity of the decree is to be determined—we find this recital: "Thursday, October 27, 1892. Court met pursuant to adjournment. Present and presiding, the Hon. Horace H. Lurton, Waller C. Caldwell, Benj. J. Lea, David L. Snodgrass, and Hon. T. S. Webb, Special Justice, *sitting by consent of counsel.*" The record must be tried by the record. Its recitals, in a collateral attack, import absolute verity. No averment can be made against the record which depends upon extraneous facts. *Kilcrease Heirs* v. *Blythe,* 6

9—8 P

Hum., 378; . *Pope* v. *Harrison*, 16 Lea, 92; Cooley
on Con. Lim., 5045.

It must therefore be taken that T. S. Webb, in
the absence of Chief Justice Turney, sat as his
substitute, and acted as a special Judge by consent
of the counsel representing the parties in this cause,
and by consent of the Court.

But counsel have in argument assumed the
position that consent does not operate as a com-
mission, and that no consent of parties can make
a Judge, or authorize one not a lawful Judge to
sit and act as a Judge. In support of this
position, counsel cite and rely upon a paragraph
from the work of Judge Cooley upon Constitu-
tional Limitations, in these words: "If the parties
cannot confer jurisdiction upon a Court by consent,
neither can they by consent empower any individ-
ual other than the Judge of the Court to exercise
its powers. Judges are chosen in such manner as
shall be provided by law, and a stipulation by
parties that any other person than the Judge shall
exercise his functions in their case would be nu-
gatory, even though the Judge should vacate his
seat for the purpose of the hearing." Side-pages
399, 400.

In support of this view the eminent author
cites the single case of *Winchester* v. *Ayres*, 4
Greene (Iowa), 104.

.The Iowa Court did hold an Act permitting
selection, by agreement, of a member of the bar
to act as Judge of the Circuit Court to be un-

constitutional. But in the later case of *Smith* v. *Trisbie*, 7 Clarke (Iowa), 487, *Winchester* v. *Ayres* was questioned, the Court declining to hold further than that if there was *objection* by either party, at the trial, the judgment on appeal would be reversed.

The case of *Van Slyke* v. *Insurance Company*, 39 Wis., is further cited in support of the view stated by Judge Cooley. A statute of Wisconsin provided that a change of venue should be ordered whenever either party to a pending suit should file a petition showing prejudice entertained by the regular Judge, unless the parties, or their attorneys, should file with the clerk a written stipulation agreeing that some member of the bar should act as Judge in that case, and empowering such attorney so selected to act as Judge in the particular case. This course was pursued, the regular Judge "stipulated" off the bench, and the trial had before an attorney acting under this statute. On *appeal* by the losing party the constitutionality of the statute was assailed. The Court held it void, upon the ground that the Constitution of the State conferred judicial power only on Judges elected in the mode pointed out by the Constitution; that the Legislature could not confer judicial power upon other than constitutional Judges, and that the parties to a suit could not, by consent, confer power to act as a Judge upon one not designated by the Constitution.

All of this may be conceded. Consent will not make a Judge. If the Constitution prescribes

the. mode and manner of electing or appointing a Judge, no other manner of appointing one can be resorted to. But it seems to us that this is not the question to be decided. A question precisely similar in principle arose in this State under our Act of 1858, Chapter 90, carried into the Code as Section 3921 (T. & S.). This section reads as follows:. "The parties may, by consent, select some member of the bar to preside as Judge or Chancellor in all civil cases where the regular Judge or Chancellor is incompetent; and this consent, entered of record, shall vest the person selected with the full power and authority of the regular Judge or Chancellor in the particular case." This statute has been almost daily acted under, as is well known to all members of the bar. Its constitutionality was assailed upon the grounds urged against the Wisconsin statute. Upon this question Judge Caruthers, speaking for the entire Court, said:

"It is argued that this Act is unconstitutional, because a Judge cannot be appointed but in the mode therein prescribed; that it is in contravention of this provision for the parties to make a Judge by agreement. But this Act does not authorize the parties to make a Judge, but only a person 'to act as Judge' in their particular case, in which the Judge of the circuit is incompetent. If the provision had been that, in such cases, the parties might, by agreement, select some attorney to decide the case or to preside over twelve other

men, who should decide upon the facts, under his instructions as to the law, could there be any objection? But if there was any thing in the name, he is not so entitled in the law, but only that he is to 'act as Judge.' That is, the powers that a Judge would have and exercise in the particular case, are conferred by agreement of the parties upon the person thus selected. It can make no difference that the regular machinery of the Court is to be used in the case, under the direction of such person. It is all by agreement; there is no compulsion. It is confined to a special case, in which the regular Judge cannot legally preside. It cannot affect the question that the case is to be tried and decided in the court-house, in term time, with a jury and Clerk and Sheriff. He is not a Judge, nor are gentlemen appointed to fill the place of one or more members of this Court who are incompetent, Judges; but they are, by the law, clothed with the same powers for the particular cases. They are to 'act as Judges.' They are to have the power and authority of Judges in the cases to be tried before them. Under this Act, the plain and easy mode of correcting errors may be resorted to which applies to ordinary cases. In this, it is better for the parties than arbitrations." *Brogan* v. *Savage*, 5 Sneed, 693.

Under the reasoning of this case, it is clear that the validity of the action of such an agreed Judge *rests upon the consent of the parties. Without the Act the effect would perhaps have been the same, pro-*

*vided* the regular Judge *assented* to the action of the parties in providing for such a special tribunal. The Act had no other constitutional effect than to require him to *permit* the agreed Judge to sit and "act as Judge" in the particular case, and that his minutes should record the judgment.

The Code provision we have been considering applied only to cases where the regular Judge was *incompetent.*

In *McCombs* v. *Guild*, 9 Lea, 81, it appeared that the regular Judge was engaged upon *other business*, and therefore the parties agreed that ·C. W. Heiskell, with the consent of the parties, should act as special Judge, and his judgment be entered as the judgment of the Court, both parties reserving right of appeal. The bill of exceptions and the judgment of the Court were signed by the special *Judge. Judge Cooper thought that no appeal could be taken from a judgment so rendered, but the other four members of the Court held that, in the absence of a motion to dismiss the appeal, this Court had obtained jurisdiction.

The Judge was not *incompetent*, and the reason for the sitting of Judge Heiskell appeared on the minutes of the Court. The judgment rested entirely upon the efficacy of the consent given to the action of the special Judge. Yet the judgment was not held void, the only question raised as to it being as to whether it was such a judgment as could be appealed from. That the judgment of one "acting as Judge" by consent in a

criminal case is void, is by no means controlling in a civil cause. Criminal cases cannot be arbitrated.

The cases of *Glasgow* v. *State*, 9 Bax., 485, and *Neil* v. *State*, 2 Lea, 675, are limited to prosecutions for crime. In the latter case Judge Cooper puts the reason of the rule upon the ground that "a person charged with a crime ought neither to be required nor permitted to select a Judge to try his case." The same disability exists in regard to all the *essentials* of a criminal trial, the defendant not being bound by a waiver of any constitutional right. But in civil causes a different rule prevails.

The Constitution expressly *disqualifies* and *prohibits* a Judge from sitting in any case in which he is *interested*, or *related* to the parties, or in which he may have been of counsel. Judge Cooley's views seem to be that these constitutional disqualifications cannot be waived, and that the judgment would be void, although no objection was made. Con. Lim., side-page 413.

To support this opinion, he cites, with others, our own case of *Reams* v. *Kearns*, 5 Cold., 217. In that case, a Chancellor had pronounced a decree in a cause in which he had been of counsel. This Court held the decree a nullity, although no objection appeared to have been made. The decision was in conflict with the earlier case of *Wroe* v. *Greer*, 2 Swan, 172, wherein the Court, through Judge Totten, said: "The objection for incompetency of the Justice should have been

taken before him, and before a trial on the merits. If not so taken, the objection is waived; for a party may waive, and preclude himself from taking any objection to a decision on account of the Judge being related to one of the parties, and the waiver may be express or by necessary implication." This case was not referred to by Judge Milligan in deciding the Kearns case.

*Reams* v. *Kearns* was followed in the subsequent cases of *Smith* v. *Pearce*, 6 Bax., 72, and *Pierce* v. *Bowers*, 8 Bax., 353. But in *Crozier* v. *Goodwin* advantage was sought to be taken, on appeal, of the fact that the Chairman of the County Court pronouncing the judgment was incompetent, by reason of relationship. Without noticing *Reams* v. *Kearns*, or the two subsequent cases following it, this Court unanimously held that the incompetency was waived by failure to take objection *in limine*, Judge Freeman, who spoke for the Court, saying: "It would be monstrous to allow a party to acquiesce in the action of such a Court without objection, and then, on appeal, show the fact as ground for reversal." 1 Lea, 128.

In *Holmes* v. *Eason*, 8 Lea, 754, the Court approved the decisions in *Wroe* v. *Greer* and *Crozier* v. *Goodwin*, *supra*, and overruled *Reams* v. *Kearns*, *Smith* v. *Pearce*, and *Pierce* v. *Bowers*. In *Posey* v. *Eaton*, 9 Lea, 501, the ruling in *Holmes* v. *Eason* was approved unanimously. The right to a trial by an impartial Judge is a very high right, but these cases establish not only that one may consent

to a trial before a disqualified Judge, but that, if he fails to object, he is conclusively presumed to consent. The right to waive a right is the highest of all rights. If the constitutional disqualifications may be waived by failure to object, we cannot see why one who consents for a learned and disinterested lawyer to sit and "act as . Judge," or as the substitute for an absent Judge, is not estopped to afterwards complain when an adverse result is reached.

Consent did not make him a Judge, but it authorized him to "act as a Judge;" and if the Court with whom he sat consented to give effect to his opinion by adopting it, and rendering judgment in accordance with it, petitioners cannot complain. The judgment is not void or voidable.

But upon another ground we reach the same result. We have heretofore treated the case as if a single Judge constituted the Court. The Constitution prescribes that this Court shall be composed of five Judges; yet the same instrument prescribes that the concurrence of three shall make a constitutional judgment. The same number which may render a judgment constitute a quorum of the Court, and may sit as a *Court* in the absence of the minority.

It appears from the judgment and minutes that the " *Court*" sat and *heard* and *decided* this cause. The minutes show four of the regular members present and participating. Three of these were competent to decide the case. All four appear to

have concurred in the judgment. Even though there might have been difference of opinion, the "*Court*," as an organized body, directed the entry which was made to be made, and thus registered it as the judgment of the "Court." It is not intimated, even if material, that the vote of Special Judge Webb was necessary to reach a conclusion. That he announced the *opinion* of the Court is wholly immaterial. It was not his opinion, but the opinion of the Court announced by its direction. Whether he was competent or incompetent, whether he sat with or without color of title, is in such case immaterial. The concurrence of the regular members of the Court in adopting his opinion as the opinion of the Court operated to give it force and legality. If he be treated merely as *amicus curiae*, it is of no consequence. He, by direction of a quorum authorized to sit and decide the cause, *announced* what the judgment of the "*Court*" was.

In a late Pennsylvania case, it was urged that the judgment of a Court, composed of three members, was void, because the judgment was announced by a member of the Court whose commission had expired, and who was no longer a Judge. The Court of Appeals, upon consideration of this objection, said: "There is no doubt but that the Court was properly held by the associates. The rule had been argued before all the Judges, and certainly there was nothing either improper or unlawful in the enunciation of their opinions, either by the associates or by the former

law Judge as *amicus curiae.* &ast; &ast; &ast; Even had the associates alone heard and made disposition of the rule, there would, according to the decisions above cited, have been no error." *Risber* v. *Boos,* 110 Penn. St., 598.

The circumstance that one not a member of the Court participated in the hearing, consultation, and decision, when such person does so by consent of the Court and of the counsel in the case, cannot, and ought not, have the effect upon the judgment of a participation by one *interested* in the result. In the latter case the Court might regard the fact that the *vote* of such interested party was not vital as immaterial, in view of the impossibility of determining how far the influence of such interested person might have affected the result. The case of the *Queen* v. *Justices of Hertfordshire,* 6 Q. B., 753, was a case of this latter class, as was that of *Oakey* v. *Aspinwell,* 3 N. Y. But when the objection is, not that the disqualified person, joining with a Court of several in the hearing and determination of a cause, was himself *interested* in the result, but that he was without a commission, and it further appears that this participation was by consent of counsel and of the Court, the doctrine of the cases cited above has no application. The right to a trial before a full bench, or a bench exclusively of Judges in commission, are rights, but they are rights which may be waived. The entire Court concur in this opinion.

Petition dismissed.