IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 09, 2015

RICHARD K. WILLIAMS, BY AND THROUGH HIS ATTORNEY-IN-FACT, JENNIFER ANN REZBA v. HEALTHSOUTH REHABILITATION HOSPITAL NORTH

Appeal from the Circuit Court for Shelby County
No. CT00485011      James F. Russell, Judge

_____

No. W2015-00639-COA-T10B-CV – Filed May 8, 2015

_____

This accelerated interlocutory appeal results from the trial court's denial of Appellant's motion for recusal. Having reviewed the trial court's ruling on the motion for recusal pursuant to the *de novo* standard of review required under Tennessee Supreme Court Rule 10B, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court is Affirmed**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Bruce A. McMullen, Jennifer A. Sink, and Mary Wu, Memphis, Tennessee, for the appellant, Healthcare Rehabilitation Hospital North.

William H. Haltom, Jr., Memphis, Tennessee for the appellees, Robert W. Greene, Jr., M.D., P.C., and Robert W. Greene, Jr., M.D.

Louis P. Chiozza, Jr. for the appellee, Jennifer Rezba.

**OPINION**

**I. Background**

This Health Care Liability action arose from an incident in which Richard Williams slipped and fell in the parking lot of a restaurant in Memphis. Mr. Williams was seventy-nine years old at the time of the fall. Mr. Williams is a former television and radio personality, who became a local celebrity as a magician performing magic tricks on a local television show, which aired on WMC-TV, the NBC-affiliate in Memphis, from 1966 until 1989. Magicland, Mr. Williams' magic show for children, was televised every week for a half-hour before a live studio audience. Mr. Williams, known to his fans as "Mr. Magic," holds a world record for hosting the longest running television magic show.

After Mr. Williams' fall, he was treated at St. Francis Hospital for a fractured hip. After a recovery period in the hospital, Mr. Williams was admitted to Appellant HealthSouth Rehabilitation Hospital North ("HealthSouth"). On his admission to HealthSouth, a nurse performed an initial assessment, spending approximately twenty minutes with Mr. Williams. The nurse oriented Mr. Williams to his room and left him to rest. Approximately forty-five minutes later, Mr. Williams was found on the floor, having fallen from his bed.

In March 2008, Mr. Williams, through his granddaughter, caretaker, and only remaining family member, Jennifer Rezba (together with Mr. Williams, "Plaintiffs") filed suit against HealthSouth, Dr. Robert W. Greene, Jr., M.D., P.C., and Dr. Robert W. Greene, Jr., Mr. Williams' admitting physician (together with Dr. Robert W. Greene, Jr., M.D., P.C., and HealthSouth, "Defendants," and together with Dr. Robert W. Greene, Jr., M.D., P.C., and Plaintiffs, "Appellees"). The complaint alleged medical negligence on the part of the Defendants. Plaintiffs claimed that Mr. Williams should have been restrained due to his allegedly confused state and further alleged that Mr. Williams' current dementia and Alzheimer's disease were caused by the fall at HealthSouth.

After a protracted procedural history, which is not relevant to this appeal, the case was tried to a jury beginning on September 22, 2014. The Honorable James Russell presided over the trial. During the course of trial, on or about October 8, 2014, Plaintiffs' lawyer (allegedly without notice to Defendants) requested that the trial court allow Plaintiffs to play, for the jury, a montage video showing Mr. Williams at various points during his life. The video was made in conjunction with a fundraising tribute show for Mr. Williams. Included in the montage were photographs from Mr. Williams' childhood as well as photographs from his career as a television personality. Based on objections lodged by Defendants that the video was not relevant and would be used only to garner sympathy for Mr. Williams from the jury, Judge Russell reviewed the video footage outside the presence of the jury in order to make a ruling on its admissibility.

After viewing the video, Judge Russell made the following comments:

Well, I must say that what we've just seen is an incredibly charming presentation. And I would be less than honest if I didn't indicate that at this very moment, I am overcome with emotion. And during the playing, I noticed that Ms. Rezba particularly was having a more difficult time than even I am. I want to take a break to collect myself.

Following a brief recess, Judge Russell questioned the attorneys concerning the production of the video, and its relevance. Following fairly lengthy discussion, which included argument concerning the admissibility of certain newspaper articles, the trial court agreed to allow the video into evidence, stating, "in spite of its, let's say, passionate nature, the value in the form of rebuttal evidence outweighs any prejudicial effect that it may have upon the jury." At this point, HealthSouth's lawyer stated:

Your Honor, I noted when you saw the video of Mr. Williams, the Court teared up and had to take a moment. That is the type of passion, sympathy and emotion that is not really relevant to the facts in this case. And that is what we have talked about keeping away from the jury.
It may come a time that the Court may have to operate as 13th juror. And the Court has seen that and has shown a certain amount of passion.
And we respectfully request the Court—we request that the Court . . . consider our motion for the Court to recuse himself from this matter, and we move for mistrial on that basis.

Plaintiffs' attorney objected to the motion for recusal. Although Dr. Greene's lawyer joined in the oral motion at trial, Dr. Greene is not contesting the denial of the motion for recusal in this appeal.

The trial court made the following comments from the bench and orally denied the motion for recusal, stating:

Well, nobody told me this job was easy. I know this motion is not made lightly, and I do not take it lightly.
I feel compelled to correct the record to a certain extent. Reference has been made to, if you will, moved to tears. I've not been wiping tears away from my cheeks. I simply felt it necessary and appropriate to call time out, so to speak, to collect my thoughts.
And I dare say there's probably not a person in this room, not a single person in this room, who would not be somewhat moved by the video that we all watched together. It's only human nature. And just

3

because a judge wears a black robe does not mean that the judge is not human . . . .

And I cannot tell you the number of times during the course of my now 18 years almost on the bench where cases will evoke some emotional response. They range particularly from the cases in the divorce and family law arena to any number of other personal injury cases where tragedy is involved.

And again, a person cannot help but experience some level of emotion with the presentation of the evidence associated with those various cases. And I've not been immune to it as a judge.

But here's the point . . . I took a solemn oath, the gist of which is that I would render decisions fairly and impartially and in support of the Constitutions of the State of Tennessee and United States of America without bias, prejudice or sympathy one way or the other.

I have examined these issues. And as I indicated, I like to believe that every issue I decide is consistent with that solemn oath . . . without bias, prejudice or sympathy one way or the other. And I have done so in this instance, as well, just like any other number of instances where the same argument might be made.

After deliberations, on October 14, 2014, the jury returned a unanimous verdict in favor of the Defendants. The trial court entered an order on the jury verdict on October 22, 2014. Following the verdict, Plaintiffs filed a motion for new trial on several grounds. As is relevant to this appeal, Plaintiffs asserted that the verdict was contrary to the weight of the evidence and asked the court to grant a new trial after independent review of the evidence as Thirteenth Juror. On January 28, 2015, HealthSouth filed a written motion for recusal, asserting that Judge Russell had demonstrated the appearance of partiality toward the Plaintiffs based upon his overly emotional response to the disputed video montage. Judge Russell denied the motion by written order entered on April 7, 2015. In its April 7, 2015 order, the trial court refers to the written motion for recusal as the "Second" motion for recusal and includes, as its grounds for denying the motion, portions of the foregoing statements made from the bench during the October 8, 2013 hearing. Specifically, the order provides:

I cannot tell you the number of times during the course of my now 18 years almost on the bench where cases will evoke some emotional response. They range particularly from the cases in the divorce and family law arena to any number of other personal injury cases where tragedy is involved.

4

And again, a person cannot help but experience some level of emotion with the presentation of the evidence associated with those various cases. And I've not been immune to it as a judge.

But here's the point: This coming February, it will be a full 18 years that I've placed my left hand on the Bible that belonged to my wife's grandmother. And I took a solemn oath, the gist of which is that I would render decisions fairly and impartially and in support of the Constitutions of the State of Tennessee and United States of America without bias, prejudice or sympathy one way or the other.

I have examined these issues. And as I indicated, I like to believe that every issue I decide is consistent with that solemn oath that I took almost 18 years ago, without bias, prejudice or sympathy one way or the other. And I have done so in this instance, as well, just like any other number of instances where the same argument might be made.

HealthSouth filed its petition for interlocutory appeal on April 9, 2015.

## II. Issues

### A. Timeliness of the Appeal

As a preliminary matter, we address Plaintiffs assertion that HealthSouth is not entitled to an appeal "having allowed the fifteen days allowed under Rule 10B to elapse from the time the motion for recusal was first heard on October 8, 2014." Tennessee Supreme Court Rule 10B provides, in relevant part:

1.01. Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so **by a timely filed written motion**. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this Rule.

\*        \*        \*

1.03. Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion. If the motion is denied, the judge **shall state in writing** the grounds upon which he or she denies the motion.

*       *       *

2.01. If the trial court judge enters an order denying a motion for the judge's disqualification or recusal, or for determination of constitutional or statutory incompetence, the trial court's ruling either can be appealed in an accelerated interlocutory appeal as of right, as provided in this Section 2, or the ruling can be raised as an issue in an appeal as of right, see Tenn. R. App. P. 3, **following the entry of the trial court's judgment**. These two alternative methods of appeal—the accelerated interlocutory appeal or an appeal as of right **following entry of the trial court's judgment**—shall be the exclusive methods for seeking appellate review of any issue concerning the trial court's denial of a motion filed pursuant to this Rule. In both types of appeals authorized in this section, the trial court's ruling on the motion for disqualification or recusal shall be reviewed by the appellate court under a de novo standard of review, and any order or opinion issued by the appellate court should state with particularity the basis for its ruling on the recusal issue.

2.02. To effect an accelerated interlocutory appeal as of right from the denial of a motion for disqualification or recusal of the trial court judge, a petition for recusal **appeal shall be filed in the appropriate appellate court within fifteen days of the trial court's entry of the order**. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk. For purposes of this section, "appropriate appellate court" means the appellate court to which an appeal would lie from the trial court's final judgment in the case.

Tenn. S. Ct. R. 10B (emphases added). Rule 10B clearly indicates that a motion for recusal must be made in writing, and that the time for filing an accelerated interlocutory appeal is fifteen days following the entry of the trial court's judgment. Perhaps this requirement is in keeping with the well-settled notion that a trial court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Accordingly, "[a] judgment must be reduced to writing in order to be valid. **It is inchoate, and has no force whatever, until it has been reduced to writing** and entered on the minutes of the

court, and is completely within the power of the judge or Chancellor." ***Broadway Motor Co. v. Pub. Fire Ins. Co.***, 12 Tenn. App. 278, 280 (1930); *see also **Steppach v. Thomas***, 346 S.W.3d 488, 522 (Tenn. Ct. App.2011) (quoting ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 31 (Tenn.2001)). In light of this well-settled law and the mandates contained in Rule 10B, we conclude that the oral motion for recusal and the trial court's oral denial of the motion at the October 8, 2013 hearing were of no effect to trigger the timeline for purposes of an accelerated interlocutory appeal. In other words, until the motion was made in writing and an order was entered on that motion, HealthSouth could not have filed its accelerated interlocutory appeal under Rule 10B. Whether the written motion, filed on January 28, 2015, was a "second" motion for recusal (as the court's April 7, 2015 order states), or whether it was the first motion based upon the same grounds asserted orally at the October 8 hearing is of no consequence in terms of the timeliness of the appeal. It was not until April 7, 2015, when the trial court entered its judgment denying recusal, that the fifteen-day time period under Tennessee Supreme Court Rule 10B began to run. Accordingly, HealthSouth's April 9, 2015 notice of appeal was timely so as to confer jurisdiction on this Court.

## B. Waiver

Plaintiffs further assert that HealthSouth has waived its right to an accelerated interlocutory appeal. Specifically, Plaintiffs argue that HealthSouth "knew the grounds for which their Motion for Recusal were founded since October 8, 2014 and were put on notice that Plaintiff-Appellee was moving for a new trial as of November 18, 2014, which would require Judge Russell to act as thirteenth juror." Instead of immediately filing their written motion for recusal, Plaintiffs argue that HealthSouth waited more than two months to file the motion as a strategic move. Although Plaintiffs' brief does not go into detail as to what HealthSouth's strategy might be for delaying its filing, Plaintiffs cite the case of ***Kinard v. Kinard***, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998):

> A party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order "to experiment with the court ... and raise the objection later when the result of the trial is unfavorable." ***Holmes v. Eason***, 76 Tenn. (8 Lea) 754, 757 (1882); *see also **Gotwald v. Gotwald***, 768 S.W.2d 689, 694 (Tenn.Ct.App.1988). Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, *see **United States v. Baker***, 441 F. Supp. 612, 616 (M.D.Tenn.1977); ***Hunnicutt v. Hunnicutt***, 248 Ga. 516, 283 S.E.2d 891, 893 (1981), and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality. *See **In re***

*Cameron*, 126 Tenn. at 663, 151 S.W. at 78; ***Radford Trust Co. v. East Tennessee Lumber Co***., 92 Tenn. 126, 136–37, 21 S.W. 329, 331 (1893); ***Holmes v. Eason***, 76 Tenn. (8 Lea) at 761.

At the time HealthSouth filed its written motion for recusal, i.e., January 28, 2015, Judge Russell had not yet acted as a thirteenth juror, and there was no "unfavorable" ruling. Of course, based upon its oral motion for recusal (which was of no legal effect based upon the foregoing analysis), it is clear that HealthSouth's concern with Judge Russell's impartiality was its fear that he could not act as an unbiased thirteenth juror. Until Plaintiffs filed their motion for new trial, on January 5, 2015, asking Judge Russell to act as the thirteenth juror, there was no opportunity for HealthSouth's concerns of impartiality to be realized. It was only after Plaintiffs filed for a new trial that there was a possibility that HealthSouth's concern might actually occur, i.e., that Judge Russell would act as thirteeth juror in a biased manner. HealthSouth filed its written motion for recusal on January 28, 2015, which was not an overtly long delay after Plaintiffs filed their motion for new trial. Based upon the stated grounds for recusal, we cannot conclude that HealthSouth waived its appeal in this case by waiting until after Judge Russell was asked to perform his role as thirteenth juror to file its objection.

## B. Denial of Recusal

When reviewing a Tennessee Supreme Court Rule 10B appeal, the only order this Court may review is the trial court's order that denies a motion to recuse. ***Duke v. Duke***, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]"). Accordingly, the sole issue is whether the trial court erred in denying the Defendants' motion for recusal.

## III. Standard of Review

We review the trial court's ruling on the motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01.[1] The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." ***McKenzie v. McKenzie***, No. M2014–00010–COA–T10B–CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014).

---

[1] Prior to the adoption of Tenn. S. Ct. R. 10B, appellate courts reviewed recusal decisions under an abuse of discretion standard*. State v. Hester*, 324 S.W.3d 1, 72–73 (Tenn. 2010); ***Bailey v. Blount County Bd. of Educ***., 303 S.W.3d 216, 239-40 (Tenn. 2010); ***State v. Hines***, 919 S.W.2d 573, 578 (Tenn. 1995) ("A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record").

# IV. Analysis

Aristotle said: "The law is reason, free from passion." In the spirit of this famous quotation, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" "'The right to a fair trial before an impartial tribunal is a fundamental constitutional right[,]'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)), and it remains "important to preserve the public's confidence in a neutral and impartial judiciary." *Id*. As we have emphasized in the past, "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."); *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "'in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias, 'since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" *Shelby County Gov't v. City of Memphis*, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at *4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted). In examining requests for recusals due to bias, it is important to keep in mind the fundamental protections that the rules on recusal are intended to provide. The law on judicial bias is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor."[2] *Bean*, 280 S.W.3d at 803 (citation omitted).

Contrary to popular belief, judges are human and, as such, have feelings and emotions. As set out in context above, Judge Russell concedes as much in his statements from the bench. However, the mere fact that a judge may feel emotion or may sympathize with a party does not, *ipso facto*, mean that he or she cannot be unbiased. It is the judge's bias (actual or perceived), and not his or her emotion, that drives the inquiry of whether recusal is warranted. Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. *Alley*, 882 S.W.2d at 821. However,

---

[2] The Constitutional provision, Article VI, Section 11 of the Tennessee Constitution, provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested...."

[n]ot every bias, partiality, or prejudice merits recusal. To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case."

\*     \*     \*

If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge. However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.

*Id*. (citations omitted); *see also* **Spain v. Connolly**, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980). In other words, to justify recusal, any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case. If the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.

As discussed above, HealthSouth's primary basis for its motion for recusal was the argument that, because Judge Russell showed emotion after watching the video, he would be partial to Plaintiffs in acting as Thirteenth Juror. In the first instance, the alleged bias in this case arises from events or observations that occurred during the litigation of the case; accordingly, in order to justify Judge Russell's recusal, HealthSouth would have to show that the "bias is so pervasive that it is sufficient to deny" a fair trial. Here, HealthSouth won its case, receiving a unanimous verdict from the jury. The motion for recusal was filed before Judge Russell actually acted in his capacity as Thirteenth Juror to review the jury's verdict. Therefore, when HealthSouth filed this Rule 10B appeal, Judge Russell had neither reached a "prejudged conclusion because of interest, partiality, or favor," **Bean**, 280 S.W.3d at 803, nor had he rendered "an opinion on the merits on some basis other than what the judge learned from participation in the case." **Alley**, 882 S.W.2d at 821. In short, HealthSouth has failed to meet its burden to show the type of pervasive bias that would warrant Judge Russell's recusal. From the totality of the circumstances, we conclude that a reasonable person "'in the judge's position, knowing all of the facts known to the judge, would [not] find a reasonable basis for questioning the judge's impartiality.'" **Davis**, 38 S.W.3d at 564-65 (citation omitted).

### V. Conclusion

The order of the trial court denying Defendants' motion for recusal is affirmed. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs on this appeal are assessed against the Appellant, HealthSouth Rehabilitation Hospital North and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE